# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT BARBOUR,<br><br>   Petitioner,<br><br> v.<br><br>ANDRE MATEVOUSIAN,<br><br>   Respondent. | Case No. 1:17-cv-00965-JLT (HC)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS<br><br>ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT AND CLOSE CASE |

  At the commencement of this case, Petitioner was in the custody of the Bureau of Prisons ("BOP") at the United States Penitentiary at Atwater, California ("USP Atwater"). He is now incarcerated at Federal Correctional Institution in Berlin, New Hampshire ("FCI Berlin"). He filed a petition for writ of habeas corpus challenging a disciplinary action taken against him for violating BOP prohibited codes 111A (introduction of narcotics or drugs not prescribed by medical staff); 196 (use of mail to further criminal activity); and 297 (use of telephone for abuses other than criminal activity). See Declaration of Christopher Liwag ( "Liwag Decl.") ¶ 22. For his violation of code 111A, Petitioner was sanctioned with 41 days loss of Good Conduct Time ("GCT"), 30 days of disciplinary segregation, 90 days loss of phone privileges, and a monetary fine of $50.00. Id. at ¶ 24. For violating code 196, he was sanctioned with 41 days loss of GCT, 30 days of disciplinary segregation, 90 days loss of phone privileges, and a monetary fine of

$50.00. Id. For his violation of code 297, he was sanctioned with 27 days loss of GCT, 90 days loss of phone privileges, and a monetary fine of $30.00. Id.

Petitioner claims his procedural due process rights were violated in the disciplinary hearing. He also contends the evidence was insufficient to support the findings. Respondent contends that Petitioner was afforded all the procedural and substantive due process rights he was entitled to, and requests the petition be denied. The Court[1] will DENY the petition.

## I. BACKGROUND

Petitioner is currently incarcerated at FCI Berlin serving a 420-month sentence for having been found guilty of conspiring to possess with intent to distribute and distribution of at least 500 grams of cocaine and at least 50 kilograms of marijuana. Id. at ¶ 5.

On July 20, 2017, Petitioner filed a federal petition for writ of habeas corpus in this Court. As previously stated, he does not challenge his conviction, but a disciplinary proceeding held on December 7, 2015. Id. at ¶ 16. He claims his procedural due process rights were violated in the disciplinary hearing because he was not provided proper notice of the charges, he was denied his right to call a witness, and he was denied his right to an impartial hearing officer. He also claims that the substance at issue was not properly tested, that a charge was erroneously added at the hearing of which Petitioner had no notice, that a charge was duplicative, and that the fine imposed was invalid. He further alleges that the hearing officer made several factual errors and that resulted in an erroneous finding of guilt.

On November 8, 2017, Respondent filed an answer to the petition. (Doc. No. 14.) Petitioner did not file a reply to Respondent's answer.

## II. DISCUSSION

### A. Jurisdiction

Writ of habeas corpus relief extends to a person in custody under the authority of the United States. See 28 U.S.C. § 2241. While a federal prisoner who wishes to challenge the validity or constitutionality of his conviction must bring a petition for writ of habeas corpus

---

[1] The parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c).

2

1 pursuant to 28 U.S.C. § 2255, a petitioner challenging the manner, location, or conditions of that sentence's execution must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241. See, e.g., Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990); Capaldi v. Pontesso, 135 F.3d 1122, 1123 (6th Cir. 1998); Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 n.5 (2nd Cir. 1991); United States v. Jalili, 925 F.2d 889, 893-94 (6th Cir. 1991). To receive relief under 28 U.S.C. § 2241 a petitioner in federal custody must show that his sentence is being executed in an illegal, but not necessarily unconstitutional, manner. See, e.g., Clark v. Floyd, 80 F.3d 371, 372, 374 (9th Cir. 1995) (contending time spent in state custody should be credited toward federal custody); Jalili, 925 F.2d at 893-94 (asserting petitioner should be housed at a community treatment center); Barden, 921 F.2d at 479 (arguing Bureau of Prisons erred in determining whether petitioner could receive credit for time spent in state custody); Brown, 610 F.2d at 677 (challenging content of inaccurate pre-sentence report used to deny parole).

In this case, Petitioner challenges the execution of his sentence. Therefore, the Court has jurisdiction to consider the petition pursuant to 28 U.S.C. § 2241.

**B.     Venue**

A petitioner filing a petition for writ of habeas corpus under 28 U.S.C. § 2241 must file the petition in the judicial district of the petitioner's custodian. Brown, 610 F.2d at 677. Petitioner was in the custody of the Bureau of Prisons at USP Atwater, which is located within the jurisdiction of this Court, at the time he filed the petition. 28 U.S.C. §§ 2254(a); 2241(d). Therefore, venue is proper in this Court.

**C.     Exhaustion**

A petitioner who is in federal custody and wishes to seek habeas relief pursuant to 28 U.S.C. § 2241 must first exhaust available administrative and judicial remedies. Brown v. Rison, 895 F.2d 533, 535 (9th Cir.1990); Chua Han Mow v. United States, 730 F.2d 1308, 1313 (9th Cir.1984). It is only after a petitioner has fully exhausted his administrative remedies that he becomes entitled to present his claims to the federal court. See United States v. Mathis, 689 F.2d 1364, 1365 (11th Cir.1982). Respondent admits that Petitioner has exhausted his administrative remedies by presenting his claims to the highest level.

1  **D.    Review of Petition**

2  1.   <u>Factual Background[2]</u>

On September 21, 2015, mail room staff at USP Atwater discovered an incoming article of certified mail coming from Philadelphia, PA, addressed to Petitioner with another inmate's registration number. In this mail, staff located several pieces of orange paper-like substance stuck together with "N8" stamped on them. This orange paper was located in the seam of the envelope on the back side, in the middle of the bottom portion. A sample was tested with the NIK test kit A, and this yielded a positive result for the presence of Opium alkaloids. A second sample was tested with the NIK test kit K, and this yielded a positive test result for the presence of Heroin. All testing and appearance indicated the presence of Suboxone.

On September 22, 2015, Supervisory CSS M. Fischer approached Petitioner in the main corridor during the noon meal and advised him that he had received an article of certified mail from Pennsylvania that bore his name and the registration number of another inmate. Fischer advised that he needed to determine the actual recipient and was waiting for the other inmate to show for the noon meal. Petitioner told Fischer he did not know who the other inmate was but the letter was surely his. After this encounter, Petitioner was observed departing the main corridor and then approaching another inmate. They had a discussion, and then Petitioner was observed looking around and calling for another inmate. The other inmate approached Petitioner and further discussion was had.

Petitioner then returned to Fischer with the other inmate, whereupon the inmate advised Fischer that he did not know the sender and does not receive legal work. Petitioner then asked to have the letter. Fischer responded that he would have to wait because the letter's status still required clarification.

There was evidence of numerous phone calls placed by Petitioner's cellmate on his own account as well as Petitioner's account. There was electronic surveillance footage showing that on dozens of occasions, Petitioner would initiate the phone call and then hand the phone to his

---
[2] The factual background is derived from the Liwag Declaration attached to Respondent's answer and supporting exhibits.

cellmate. The calls were chronicled from August 18, 2015, to September 22, 2015. Throughout the phone calls, code words were used for drugs and arrangements were made to acquire them from outside suppliers through the mail.

As a result, Petitioner was charged with a violation of Code 111A (introduction of narcotics or drugs not prescribed by medical staff), Code 196 (use of mail to further criminal activity), and Code 197 (use of telephone to further criminal activity). He received notice of the charges and disciplinary hearing and advised of his rights on November 23, 2015.

On November 29, 2015, the incident report was revised by Lieutenant S. Kaleta. The second incident report was largely identical to the first. It contained the same charges and the description of the incident was identical. The same 47 calls and emails were referenced as evidence. Because the first incident report was reinvestigated by the Unit Disciplinary Committee (UDC), an Advisement of Incident Report Delay was issued to Petitioner on December 2, 2015.

On November 29, 2015, Petitioner was provided advanced written notice of the charges concerning the revised incident report. Petitioner previously had been advised of his rights on November 23, 2015; however, he was again advised of his rights on December 2, 2015, following issuance of the second incident report.

The hearing was held on December 7, 2015, before Disciplinary Hearing Officer (DHO) Christopher Liwag. Liwag was trained and certified in DHO policies and procedures. Liwag did not investigate or have any prior knowledge of this incident before it was referred to him. Liwag considered Petitioner's defense that he had nothing to do with the incident. He considered the evidence which included: 1) a detailed description of 47 phone and email communications between the inmate who Petitioner provided the use of his phone account and outside narcotics suppliers; 2) a memorandum written by mailroom staff members who discovered the Suboxone in the envelope; 3) the narcotics certification test results; 4) the statement of Petitioner's identified Inmate Witness; and 5) Petitioner's own statements. Petitioner asked his inmate witness appear at the hearing. The request for the witness was denied, because the inmate witness had already been consulted and provided a statement concerning the charges. Liwag

found the inmate witness' presence would have been repetitive and unnecessary.

Upon consideration of the evidence, Liwag concluded that Petitioner had committed violations of Codes 111A and 196, as charged. However, he lowered the third offense from a Code 197 violation to the less serious charge of Code 297. The penalties for these violations were previously set forth.

2.  Due Process Rights

Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be diminished by the needs and objectives of the institutional environment. Wolff v. McDonnell, 418 U.S. 539, 555 (1974). Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings. Id. at 556. Thus, a prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison. Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989) (citing Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-455 (1984)).

When a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an impartial hearing body; (3) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (4) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567. In addition, due process requires that the decision be supported by "some evidence." Hill, 472 U.S. at 455 (citing United States ex rel. Vatauer v. Commissioner of Immigration, 273 U.S. 103, 106 (1927)).

Petitioner first disputes that he received advanced written notice of the charges. He claims that he was not provided proper notice after the incident report was revised, and he was not given advanced notice of the lesser Code 297 violation of which he was found guilty. His arguments are without merit. As previously noted, he was provided more than 24 hours advanced notice of both the first incident report and the revised second report. He was advised of the charges on November 23, 2015, and again on November 29, 2015, which was well in

advance of the December 7, 2015, hearing. He complains that he wasn't provided a renewed notice of an additional UDC hearing after the incident report was revised. As pointed out by Respondent, this is inconsequential since he was provided advance notice of the charges prior to the disciplinary hearing, which is what mattered. In addition, he was already provided notice of the charges, and they were identical to those in the revised report. With respect to Petitioner's complaints concerning the lesser violation of Code 297, the DHO is well within his authority to determine that the inmate committed the exact prohibited acts charged, additional acts, or acts similar to the prohibited acts. 28 C.F.R. § 541.8. In addition, the DHO had the authority to impose a fine. 28 C.F.R. § 541.4(b)(4)(E).

Petitioner next complains the DHO was not an impartial hearing body, and his determination was unlawfully made on the basis of race. There is no foundation for this allegation in the record. Petitioner's claim is entirely conclusory.

Petitioner alleges that he was denied his right to call his cellmate, inmate Mark Jordan, as a witness. A prisoner's request for witnesses may be denied on the basis of, *inter alia*, "irrelevance, lack of necessity, or the hazard presented in individual cases." Wolff, 418 U.S. at 566. Here, the inmate witness had already provided a statement. Therefore, the DHO was well within his authority to deny Petitioner's request, since the inmate's testimony would have been repetitive and unnecessary. See Bostic v. Carlson, 884 F.2d 1267, 1273 (9th Cir. 1989) ("prison disciplinary committees may sometimes deny a defendant the right to call redundant and unnecessary witnesses").

Finally, there does not appear to be any dispute that Petitioner received a written statement by the DHO of his determination. According to DHO Liwag, he placed a copy of his decision in institutional mail on December 15, 2015. Liwag Decl. ¶ 26. Accordingly, all procedural due process requirements were satisfied.

Petitioner also argues that there is insufficient evidence to support the guilty findings. At the hearing his defense was "[t]hat I don't have anything to do with this stuff." (Doc. 14-2 at 66.) Contrary to Petitioner's contention, however, a review of the record reveals there was ample evidence supporting the charges. The 47 emails and telephone communications reflected

that Petitioner and his cellmate were involved in drug trafficking. The evidence showed that Petitioner's cellmate would communicate with outside drug suppliers using his and Petitioner's telephone accounts. Petitioner would sometimes initiate the telephone call and then hand the telephone to his cellmate. After Petitioner was informed that the mailroom had received an envelope addressed to him but with the identification number of another inmate, Petitioner claimed it belonged to him. The envelope contained Suboxone concealed in the seams. The envelope came from the same location as the supplier, and the Suboxone was concealed in the exact manner discussed in the email and telephone communications. This evidence clearly constitutes at least "some evidence" supporting the guilty findings.

Accordingly, Petitioner fails to demonstrate that either his procedural or substantive due process rights were violated. Wolff, 418 U.S. at 564. The petition must be denied.

### III. ORDER

Accordingly, the Court **ORDERS**:

1) The Petition for a Writ of Habeas Corpus is DENIED WITH PREJUDICE;

2) The Clerk of Court is DIRECTED to enter judgment and close the case; and

3) As this petition is filed pursuant to 28 U.S.C. § 2241 and does not concern the underlying conviction, a certificate of appealability is not required. Forde v. U.S. Parole Comm'n, 114 F.3d 878, 879 (9th Cir.1997).

IT IS SO ORDERED.

Dated: __**February 27, 2018**__      __**/s/ Jennifer L. Thurston**__
                                                                           UNITED STATES MAGISTRATE JUDGE